| UNITED STATES DISTRICT COURT | NOT FOR PUBLICATION |
| EASTERN DISTRICT OF NEW YORK | |

ANASTASIA BELICHENKO,

                Plaintiff,

– against –

GEM RECOVERY SYSTEMS,

                Defendant.

**MEMORANDUM & ORDER**

17-CV-01731 (ERK) (ST)

Korman, *J.*:

Plaintiff Anastasia Belichenko filed this action against Defendant Gem Recovery Systems ("GRS"), alleging various violations of the Fair Debt Collection Practice Act ("FDCPA"). Because GRS failed to respond, Belichenko has moved for default judgment. For the following reasons, her motion is denied.

## BACKGROUND

Belichenko received a debt collection letter from GRS on September 16, 2016. Compl. ¶ 9. The body of the one-page letter[1] begins with the following paragraph:

> Your account has been turned over to us from the above mentioned client for collection. Since your account is delinquent, we will use any collection activity necessary to collect this debt due to our client. Our policy is to report delinquent account information to Trans Union and Experian Credit Bureaus which may impair your credit rating and your ability to obtain credit in the future.

---

[1] Although Belichenko failed to include in her complaint copies of GRS's collection letters—or even complete descriptions of them—she ultimately produced them at the direction of the court. *See* ECF No. 12. Because the complaint "relies heavily upon [the letters'] terms and effects," the court may consider them in evaluating whether Belichenko has adequately established GRS's liability as a matter of law. *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam).

ECF No. 12-1. The letter continues with two short paragraphs, followed by the following statement in bold and all-caps: "**GEM RECOVERY IS A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE**." *Id.* Immediately below this statement, the letter concludes with the following paragraph, which appears in the same size and typeface as the initial paragraphs:

> Unless you notify us within thirty days after you receive this notice that you dispute the validity of the debt, or any portion thereof, we will assume the debt to be valid. If you notify us in writing within the thirty day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of the judgment against you and will mail you a copy of such verification or judgement. If you make a written request of us within the thirty day period, we will provide you with the name and address of the original creditor, if different from the current creditor.

*Id.*

Four months later, on January 16, 2017, GRS sent Belichenko another collection letter. Compl. ¶ 18. That letter contained the following paragraph in its body text:

> It is most important that you remit payment before your past due account is added to your credit record; which may impair your credit rating. Once the derogatory reporting is listed on your credit report, it may remain on a credit report for as long as seven (7) years.

ECF No. 12-2.

Belichenko commenced this action on March 28, 2017, alleging in a boilerplate complaint that GRS's collection letters violate various provisions of the FDCPA. She claims that the two letters failed to adequately notify her of her right to dispute the debt or seek verification of it, as required by 15 U.S.C. § 1692g. She also claims that the letters were deceptive and misleading, in violation of 15 U.S.C. § 1692e, particularly 1692e(10). And finally, she alleges that the window envelopes in which GRS mailed its notices displayed the account number associated with her debt, in violation of 15 U.S.C. § 1692f(8).

On April 3, 2017, a copy of the summons and complaint was served on Sam Awar, the President of GRS. *See* ECF No. 5. GRS, however, has neither answered nor appeared in this case. Consequently, an entry of default was noted on June 28, 2017, ECF No. 9, and Belichenko now moves for a default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), seeking statutory damages, attorney's fees, and costs, ECF No. 10.

## DISCUSSION

### I. The default judgment standard

"A court's decision to enter a default against defendants does not by definition entitle plaintiffs to an entry of a default judgment." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (per curiam). While the court is required to "accept[] as true all of the factual allegations of the complaint, except those relating to damages," *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981), "it is also required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *see also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). In making this determination, courts subject the factual allegations in a complaint to the standard set forth in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). *See Priestley v. Headminder, Inc.*, 647 F.3d 497, 506 (2d Cir. 2011) (per curiam) (citing the *Iqbal* standard and reversing a district court's entry of default judgment because the facts alleged in the complaint failed to adequately support its legal conclusions); *Zapolski v. Fed. Republic of Germany*, No. 09 Civ. 1503(BMC)(LB), 2009 WL 5184325, at *1 (E.D.N.Y. Dec. 28, 2009) (refusing to grant a motion for default judgment because "[t]here [was] simply no plausible claim that appear[ed] under the standard set forth in *Ashcroft v. Iqbal*"). Accordingly, I

must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570. Merely "offer[ing] 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Moreover, I must evaluate the legal merits of Belichenko's claim because she seeks statutory damages, attorney's fees, and costs. *See* ECF No. 10-1. The FDCPA provides for up to $1,000 in statutory damages "as the court may allow," and only with respect to a "debt collector who fails to comply" with the FDCPA. 15 U.S.C. § 1692k(a). Similarly, "the costs of the action, together with a reasonable attorney's fee as determined by the court," are also available "in the case of any successful action to enforce" liability under the FDCPA. § 1692k(a)(3). Thus, for Belichenko to merit any statutory damages, attorney's fees, or costs, I must determine whether GRS violated the aforementioned provisions of the FDCPA. *See Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F. Supp. 2d 200, 204–05 (E.D.N.Y. 2009).

## II. GRS's letters did not violate section 1692g

15 U.S.C. § 1692g requires a debt collector, in its initial communication with the consumer or within five days of it, to provide the consumer with written notice, commonly called a "validation notice," of the amount of the debt and the name of the creditor to whom it is owed. 15 U.S.C. § 1692g(a)(1)–(2). Moreover, and relevant here, that notice must also include "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector," § 1692g(a)(3); "a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector,"

§ 1692g(a)(4); and "a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor," § 1692g(a)(5).

As the Second Circuit has long explained, a debt collector "has the obligation, not just to convey the [validation notice], but to convey it clearly." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008). Hence, a debt collector violates § 1692g "[w]hen a notice contains language that 'overshadows or contradicts' other language informing a consumer of her rights." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996). Since 2006, this prohibition against "overshadowing" has also been enshrined in the text of the FDCPA itself: "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." § 1692g(b).

"Whether collection activities or communications within the validation period overshadow or are inconsistent with a validation notice is determined under the 'least sophisticated consumer' standard." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010). This is an objective standard designed to protect both "consumers, even the naive and the trusting, against deceptive debt collection practices," as well as "debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993)). The least sophisticated consumer does not have "the sophistication of the average, everyday, common consumer," *Russell*, 74 F.3d at 34, yet "is neither irrational nor a dolt." *Ellis*, 591 F.3d at 135. Accordingly, the Second Circuit "has been careful not to conflate lack of sophistication with unreasonableness." *Id.*

5

Here, GRS's initial collection letter of September 16, 2016 did contain the required validation notice. But Belichenko claims that certain statements in the initial collection letter, as well as in GRS's subsequent collection notice of January 16, 2017, overshadow the validation notice and thus run afoul of § 1692g. *See* Compl. ¶¶ 13–15, 19–21, 28. This claim fails.

A. *The September 16, 2016 notice*

Belichenko alleges that the second paragraph[2] of GRS's September 16, 2016 notice letter overshadowed the validation notice. The allegedly problematic language consists of two statements: (1) "we will use any collection activity necessary to collect this debt due to our client" and (2) "Our policy is to report delinquent account information to Trans Union and Experian Credit Bureaus which may impair your client rating and your ability to obtain credit in the future." But neither one presents an overshadowing problem.

Start with the first statement. A collection letter that states "we will use any collection activity necessary to collect this debt due to our client" would not confuse the least sophisticated consumer about the right to dispute the debt or to seek verification of it. Indeed, comparable language has been found not to overshadow a letter's validation notice. In *Spira v. Ashwood Fin., Inc.*, 358 F. Supp. 2d 150 (E.D.N.Y. 2005), the court held that a debt collector's follow-up letter did not overshadow the validation notice when it stated: "It is our intent to pursue collection of this debt through every means available to us. . . . You may either send your payment in full . . . or you must call 1-800-851-5736 at once." *Id.* at 154, 159. The court explained that such language "merely advised Plaintiff that in the event that she did not pay the debt or dispute it, Defendant may avail itself of any of its legal options, which included sending more collection

---

[2] Belichenko's complaint states that the allegedly problematic language occurs in the second paragraph of the collection letter. *See* Compl. ¶ 19. However, the relevant language is actually in the first paragraph of the letter, not the second. *See* ECF No. 12.

letters and instituting legal actions." *Id.* at 159. If anything, the statement at issue here is less likely than the one in *Spira* to confuse the consumer, as it does not explicitly direct the consumer to make a payment or take any action at all. "[L]anguage that 'in no way demands *immediate* payment of [the plaintiff's] past due debt, or threatens adverse consequences in the event the debt is not paid within 30 days' does not violate the FDCPA." *McGinty v. Prof'l Claims Bureau, Inc.*, No. 15-cv-4356 (SJF)(ARL), 2016 WL 6069180, at *5 (E.D.N.Y. Oct. 17, 2016) (quoting *Rumpler v. Phillips & Cohen Assocs., Ltd.*, 219 F. Supp. 2d 251, 259 (E.D.N.Y. 2002)).

The second alleged statement—"Our policy is to report delinquent account information to Trans Union and Experian Credit Bureaus which may impair your client rating and your ability to obtain credit in the future."—also does not overshadow the letter's validation notice. At no point does it suggest to Belichenko that she "must take action within any time frame that contradicts the statutory thirty-day period," *Sebrow v. ER Solutions, Inc.*, No. 07-CV-5016(ARR)(VPP), 2009 WL 136026, at *5 (E.D.N.Y. Jan. 20, 2009). And "nothing in the FDCPA prevents a debt collector that has not received a request for validation or other reply from a consumer from continuing to attempt to collect the debt during the 30 day validation period, provided that, in so doing, it does not create the impression that the consumer has less than 30 days in which to dispute the debt." *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 664 (S.D.N.Y. 2006) (quoting *Orenbuch v. Comput. Credit, Inc.*, No. 01 Civ.9338 JSM, 2002 WL 1918222, at *2 (S.D.N.Y. Aug. 19, 2002)). The statement here would not confuse the least sophisticated consumer about his or her rights under § 1692g, which are properly spelled out in the letter's final paragraph and appear on the same page in the same size and typeface as the allegedly overshadowing language. *See Spira*, 358 F. Supp. 2d at 157.

Although she never cites it, *McStay v. I.C. Sys., Inc.*, 308 F.3d 188 (2d Cir. 2002), provides potential support in the case law for Belichenko's position. There, the plaintiff argued that a debt collector's "threat to report [the plaintiff's] debt to the National Credit Reporting Agencies after thirty days if the account was 'not paid in full or otherwise closed,' particularly when coupled with the observation that '[t]his may hinder your ability to obtain credit in the future,' overshadows and contradicts the validation notice containing the debtor's rights." *Id.* at 191. The Second Circuit ultimately declined to consider this issue for procedural reasons, but it nonetheless called the plaintiff's argument "a significant one." *Id.* Such an observation, while short of a holding, deserves some consideration.

Thus, courts in this district have considered similar overshadowing challenges and have distinguished *McStay* on various grounds. *See Spira*, 358 F. Supp. 2d at 157; *Sebrow*, 2009 WL 136026, at *5–6. In *Spira*, the court held that the following language in a collection letter did not present an overshadowing problem: "It is the policy of this agency to report all unpaid accounts to a major credit bureau after 30 days of this notice. Protect your credit by paying this debt." *Spira*, 358 F. Supp. 2d at 157. In addition to noting that *McStay*'s observation was not binding, the court explained that the letter in *McStay*:

> stated that the debt collector's decision to report the debt to the "National Credit Reporting Agencies" was based solely on how the consumer would respond to the collection letter. In contrast, Defendant notified Spira of its policy of reporting all "unpaid accounts" to a major credit bureau after 30 days of the notice, regardless of how, if at all, Plaintiff responded to the First Letter. It also did not state that Spira's failure to pay the debt and forego her right to contest it would "hinder [her] ability to obtain credit in the future" as the letter in *McStay* did. Rather, the First Letter merely advised Spira to "[p]rotect [her] credit by paying this debt."

*Id.* (internal citation and footnote omitted). And "[p]erhaps most significantly" for the court, it simply was not convinced that the language at issue "confuses, let alone that it contradicts or overshadows, the validation notice," observing that "[t]he validation notice was presented in the

8

same font, size and type-face as the first three paragraphs of the First Letter that [the defendant] contends overshadow and contradict the validation notice." *Id.*

For similar reasons, *McStay* is inapplicable here. As in *Spira*, the collection letter simply notified Belichenko of GRS's general policy of reporting delinquent accounts, "regardless of how, if at all, Plaintiff responded to the [collection letter]." *Id*. To be sure, unlike in *Spira*, GRS told Belichenko that its reporting policy "may impair your credit rating and your ability to obtain credit in the future."[3] Still, "[p]erhaps most significant[]" in *Spira* was that the court was simply "unpersuaded that the language in the [letter] confuses, let alone that it contradicts or overshadows, the validation notice," observing that "[t]he validation notice was presented in the same font, size and type-face" as the allegedly problematic language. *Id.* So too here. A collection agency's statement that it has a policy of reporting delinquent accounts and that such reporting can have negative consequences neither contradicts nor overshadows that letter's notice—again, appearing a few paragraphs down in the same font, size and typeface—that the consumer has thirty days to dispute or validate the debt. Considering the entire text of the letter at issue and the relevant case law, the language here would not imply to the least sophisticated consumer that "he must take action within any time frame that contradicts the statutory thirty-day period." *Sebrow*, 2009 WL 136026, at *5. It does not confuse or overshadow the validation notice.

---

[3] Arguably, the language in the letter in *Spira*—"Protect your credit by paying this debt"—may have been more threatening than GRS's statement that its reporting policy "may impair your credit rating and your ability to obtain credit in the future." The former directs the consumer to action, while the latter merely informs the consumer of the consequences of a bad credit rating. In any event, considering the letter in its totality, I am not persuaded that such a statement—that GRS's reporting policy may hurt Belichenko's future creditworthiness—automatically triggers a FDCPA violation.

9

B. *The January 16, 2017 collection notice*

Belichenko also alleges that GRS's January 16, 2017 letter—sent four months after the initial notice—overshadowed the validation notice when it stated that "[o]nce the derogatory reporting is listed on your credit report, it may remain on a credit report for as long as seven (7) years." Compl. ¶¶ 18–22, 28.

This claim fails. Section 1692g provides consumers with the right to dispute the validity of the debt, or to validate the original debt, *within thirty days* of receiving the initial notice. *See* 15 U.S.C. § 1692g(a)(3)–(5), (b). Therefore, a letter sent four months after the initial notice, such as this one, cannot possibly overshadow the consumer's validation rights in violation of § 1692g.

### III. Belichenko fails to state a claim under section 1692e

15 U.S.C. § 1692e prohibits a debt collector from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e contains sixteen subsections, which "set forth a non-exhaustive list of practices that fall within this ban." *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016). One of those is § 1692e(10), a catch-all provision that prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." For the purposes of § 1692e, "a collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Russell*, 74 F.3d at 35. As with § 1692g, the objective "least sophisticated consumer" standard is used to determine whether § 1692e has been violated. *See Clomon*, 988 F.2d at 1318.

Here, Belichenko has failed to sufficiently allege that any of the statements in GRS's initial notice letter violate § 1692e. Consider the statement that "[o]ur policy is to report delinquent account information to TransUnion and Experian Credit Bureaus which may impair your credit rating and your ability to obtain credit in the future." This statement "has only one

10

meaning, and Plaintiff has not proffered any evidence that it is inaccurate." *Spira*, 358 F. Supp. 2d at 160. As the court in *Spira* observed with respect to a nearly analogous statement: "to the extent that [the letter] threatens action, it merely reflects Defendant's policy, unrelated to Plaintiff's response, and reinforces the widely known fact that failure to pay debts that are owed might adversely affect one's credit rating and ability to obtain credit." *Id.* And with respect to the statement that "we will use any collection activity necessary to collect this debt due to our client," Belichenko has not pleaded any facts demonstrating how this statement has more than one meaning, or even if it does, how it is inaccurate.

Belichenko's § 1692e claim with respect to the January 16, 2017 letter fails as well. The alleged statement in that letter—"Once the derogatory reporting is listed on your credit report, it may remain on a credit report for as long as seven (7) years"—cannot "be reasonably read to have two or more different meanings, one of which is inaccurate." *Russell*, 74 F.3d at 35. Nor has Belichenko pleaded how the statement is inaccurate. Indeed, it is consistent with the Fair Credit Reporting Act, which prohibits consumer reporting agencies from making a consumer report containing "[a]ccounts placed for collection . . . which antedate the report by more than seven years." 15 U.S.C. § 1681c(a)(4).

## IV. GRS's letters did not violate section 1692f

Lastly, Belichenko alleges that both of GRS's collection letters were mailed in a window envelope, revealing her account number associated with the debt. She claims that this violated 15 U.S.C. § 1692f(8), which prohibits a debt collector from:

> Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

11

Read literally, § 1692f(8) would prohibit a debt collector from displaying an account number on an envelope, which allegedly occurred here. But a literal reading of this provision would also prohibit a debt collector from placing the consumer's name and address, or even preprinted postage, on any envelope used by the debt collector to contact the consumer. This would "yield the absurd result that a statute governing the manner in which the mails may be used for debt collection might in fact preclude the use of the mails altogether." *Gardner v. Credit Mgmt. LP*, 140 F. Supp. 3d 317, 320 (S.D.N.Y. 2015). Noting this problem, several district courts in this Circuit have read a "benign language" exception into § 1692f(8) and have specifically held that displaying a reference or account number on a debt collection envelope does not violate the FDCPA. *See, e.g.*, *Rodriguez v. I.C. Sys., Inc.*, No. 14-CV-06558 (KAM) (JO), 2016 WL 5415680, at *3–4 (E.D.N.Y. Sept. 28, 2016); *Robinson v. Mun. Servs. Bureau*, 15-cv-04832 (JG) (RML), 2015 WL 7568644, at *3 (E.D.N.Y. Nov. 24, 2015); *Gardner*, 140 F. Supp. 3d at 321–22, 324 (S.D.N.Y. 2015).

Section 1692f(8)'s purpose is "to prevent the personally damaging consequences that could flow from being identified as a debtor to those close to the recipient." *Gardner*, 140 F. Supp. 3d at 321. An account number, which ultimately is just a series of seemingly random letters, numbers, and symbols, will not reveal the debtor's identity as such to any casual observers of the mail. As Judge Shadur of the Northern District of Illinois colorfully put it in an analogous case:

> In order for any hypothetical member of the public "who views the envelope" . . . to be able to perceive that debt collection is involved and is at issue, . . . that member of the public would have to be blessed (or cursed?) with x-ray vision that enabled him or her to read the letter contained in the sealed and assertedly offending envelope. Absent that, any deciphering of the impenetrable string of numbers and symbols on the outside of the . . . envelope would have to depend on some sort of divination.

*Sampson v. MRS BPO, LLC*, 117 F. Supp. 3d 1032, 1033 (N.D. Ill. 2015). Belichenko's § 1692f(8) claim fails.

## CONCLUSION

Belichenko's motion for entry of a default judgment is DENIED. Because GRS's collection letters did not violate 15 U.S.C. §§ 1692g and 1692f, Belichenko's claims under those provisions are dismissed. Her claims under § 1692e are dismissed without prejudice.

**SO ORDERED.**

Brooklyn, New York
December 22, 2017

*Edward R. Korman*
Edward R. Korman
United States District Judge